## COTTLE v. JEFFERSON SECURITIES CO.
### (No. 1194.)

(Court of Civil Appeals of Texas. Beaumont.
May 12, 1925. Rehearing Denied
May 20, 1925.)

1. **Appeal and error** ⊜⇒1010(1)—**Conclusions, supported by evidence, not assailable.**

Conclusions of court having support in evidence are not assailable on appeal.

2. **Evidence** ⊜⇒317(10)—**Declaration of seller of automobile, three weeks after sale, is hearsay.**

In action on promissory notes in payment of automobile, declaration of person who sold automobile, three weeks after sale, that it was secondhand, was hearsay and properly excluded.

3. **Chattel mortgages** ⊜⇒280—**$500 proper value of car when replevied.**

In foreclosure of mortgage lien on automobile sold three months previously for $1,295, for which mortgagor executed replevy bond of $2,200, evidence *held* to sustain finding that car was worth $500 when bond was executed.

Appeal from District Court, Jefferson County; J. D. Campbell, Judge.

Action by the Jefferson Securities Company against Charles Cottle. Judgment for plaintiff, and defendant appeals. Affirmed.

Dies, Stephenson & Dies, of Orange, for appellant.

Smith & Jackson, of Beaumont, for appellee.

WALKER, J. In this case appellee secured judgment against appellant on a series of promissory notes executed by him in the principal sum of $948, with foreclosure of mortgage lien upon a Hupmobile touring car, together with judgment for $500 against the sureties on appellant's replevy bond given in replevy of the car during the pendency of the suit. The notes and mortgage sued upon ran in the name of appellee, but the car was the property of one Dan Beard, doing business as the Beard Motor Company, but in selling the car to appellant, instead of taking the notes and mortgage in his own name, he took them in the name of appellee, and soon after the sale on making to appellee a satisfactory report on appellant as a suitable risk sold and delivered the notes into appellee's possession.

Appellant's defenses were: (a) The car was sold to him as a new car, used only for demonstration purposes, while, in fact, it was a secondhand car; that as a new car it was of the value of $1,295, but as a secondhand car, in the condition it was delivered to him, it was worth only one-half of the sales price; that Beard, in selling the car, falsely and fraudulently represented its condition to appellant, who believed the representations to be true, accepted the car, paid part of the consideration therefor, and executed notes for the balance. (b) That Beard, in making the sale and taking the notes in the name of appellee, represented himself as being appellee's agent. (c) That no bill of sale was delivered to him at the time of the sale, as required by law on the sale of secondhand cars, and that the former owner of the car, in delivering it to Beard, did not execute to Beard the bill of sale on the car; that, because of the failure of the vendors to transfer the car by bill of sale, no title passed under the sale, and therefore the notes and mortgage were void and constituted no liability against him. (d) Appellee had both actual and constructive notice of all the facts connected with the sale, and was therefore not an innocent holder of the notes.

On the issues raised by apellant's answer the trial court made the following conclusions:

"I find that Beard committed no fraud and made no false representations to defendant, Cottle, with reference to said automobile purchased by the latter, and that said automobile, at the time defendant, Cottle, purchased same, was as represented by the said Beard in every particular; that the said automobile was not a secondhand automobile at the time of the purchase, as alleged by defendant, Cottle, but was a new automobile which had been used only for demonstration purposes by the said Beard, of which facts the defendant, Cottle, was fully advised and knew before and at the time of purchasing same, and that he purchased and accepted the same as a demonstration car, and which had been used as such, on his own proposition and terms made to Beard, and I find that at the time of purchase by Cottle the car was in good condition, and had been received by Beard Motor Company as a brand new car only three or four weeks before its sale to Cottle."

"I find that Beard, a few days before he sold the aforesaid car to Cottle, had attempted, in the usual course of trade, to sell the same to Mrs. J. L. Harcus, of Beaumont, Tex., who had theretofore been, was at the time, and has ever since been, in the employ of the plaintiff, in the capacity of cashier and bookkeeper; that the said Beard did, in the usual and customary way and extent, while attempting to sell the

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

same to her, demonstrate said car to Mrs. Harcus by driving her about in it on the streets of Beaumont and permitting her to drive the same herself on one or more occasions; but I find that the said Beard failed to accomplish and consummate the sale of said car to the said Mrs. Harcus; that Mrs. Harcus did, in fact, contemplate purchasing said car, and did at one time during the negotiations think she was going to purchase the same, and, having theretofore arranged with her employer, the plaintiff herein, to finance her in the purchase of an automobile if and when she did purchase one, in so far as concerned that part of the purchase price which she would not be able to pay herself, did go so far as to make out a set of notes and a mortgage securing same on the forms of the plaintiff, in favor of and payable to it, and describing in said mortgage the car that the said Beard a few days afterwards sold to the said Cottle; but I find that the said Mrs. Harcus did not purchase the said car, and did not deliver said papers to Beard in connection with said car, that no consideration passed from her to Beard or to his company for said car, and that there was no delivery of said car to her; that during said negotiations she learned that within a few days Beard would have the 1924 model of said car on his floor for sale, and she decided not to buy said car but to wait for the arrival of the new model, which she did, and she did purchase a new model car from Beard within a few days after the negotiations respecting the first car, and, instead of making out a new set of notes and a new mortgage to secure them, she used those which she had already made out in the previous negotiations, changing the car numbers, description, etc., thereon; and I find further in this connection that, when Mrs. Harcus decided not to buy the first car demonstrated to her, but to wait and purchase the new model, she dismissed the idea of purchasing the first car demonstrated to her from her mind, and she thought and knew nothing further about it, and had no knowledge or notice whatever, directly or indirectly, actual or constructive, of nor interest in Beard's negotiations with Cottle or with any other person for the sale of said car and the actual sale thereof, and never heard of such negotiations or sale to Cottle until after the notes given by the defendant, Cottle, in said transaction were taken over by plaintiff and it parted with its money thereon."

"In connection with the negotiations between Beard and Mrs. Harcus, and Beard's efforts to sell her the first car—which he afterwards sold to Cottle—I find that on July 12, 1923, the tax collector of Jefferson county issued a license receipt in the name of Mrs. J. L. Harcus covering the automobile which Beard had tried but failed to sell to her and subsequently sold to Cottle; but I find that Mrs. Harcus was in no sense and to no extent a party to and had nothing to do with applying for or paying for or procuring said license receipt from the tax collector, but that the said Beard, during the negotiations with Mrs. Harcus, himself applied for, paid for, and procured the said license receipt in Mrs. Harcus' name, and did so on his own responsibility, without any authority whatever from Mrs. Harcus, and without her knowledge or consent, express or implied; that Mrs. Harcus had no knowledge that Beard had procured such license receipt until she afterwards saw notice of its issuance in a Beaumont paper, whereupon she called the said Beard's attention to the same and demanded that he have the same canceled."

[1] These conclusions having support in the evidence, in fact, following almost literally the testimony of Mrs. Harcus, we must overrule all attacks made on them by appellant. Since they are well supported, it would serve no useful purpose to review the circumstances upon which appellant relies to show that the car was, in fact, a secondhand car at the time it was delivered to him. It is sufficient to say that he made a very strong case, but not one that followed as a matter of law from the evidence.

On the conclusions just quoted, it becomes immaterial whether or not Mrs. Harcus and Mr. Beard were the agents of appellee in making the sale, or who made the application to the tax collector for the automobile license, or the character of representations made by Beard to appellant as to his agency with appellee at the time of the sale. Also, it becomes unnecessary to review appellant's exception on the exclusion of evidence as to the extent of Beard's agency in connection with this sale.

[2] The court did not err in excluding the testimony offered by appellant to the effect that some time after the sale, possibly three weeks, he talked with Beard about the car, and that Beard admitted to him it was a secondhand car. No contention was made that Beard was the general agent of appellee, nor that he was its agent or had any connection with it except as to this particular transaction. The declaration offered was made long after the sale and long after his connection with this transaction, in so far as it affected appellee, had ceased. Therefore, as against appellee, the declaration was purely hearsay and inadmissible.

[3] The evidence is sufficient to sustain the court's conclusion that the car was of the market value of $500 at the time it was replevied by appellant. It had been used only three or four months, and, under the testimony of appellant himself, used very carefully. Its sale price was $1,295. Some 20 days before its replevy an expert on the market value of secondhand cars examined it carefully, and testified that in his judgment the car at that time was of the value of $500 or $600. There was no showing of an abuse of the car at any time, but the evidence was to the contrary. At the time of the replevy the sheriff fixed its value at $1,100, and appellant executed a replevy bond in the sum of $2,200.

In a very able manner, appellant has brought forward many propositions assigning error, which they have briefed very carefully, but the court's conclusions of fact given above make most of these propositions im-

material, and abstract, as far as the law of this case is concerned.

Finding no error, the judgment of the trial court is in all things affirmed.